[Cite as *State v. McKinney*, 2013-Ohio-5730.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99270**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## HERBERT MCKINNEY

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-559716

**BEFORE:** E.T. Gallagher, J., Jones, P.J., and McCormack, J.
**RELEASED AND JOURNALIZED:** December 26, 2013

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, Ohio 44067


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Steven McIntosh
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Herbert McKinney ("McKinney"), appeals his domestic violence conviction and sentence. We find some merit to the appeal, affirm in part, and reverse in part.

{¶2} On February 27, 2012, McKinney was charged with one count of domestic violence. The charge was a third-degree felony because he had two prior domestic violence convictions. McKinney executed a jury waiver, and the case proceeded to a bench trial.

{¶3} The victim, Stacy Morrow ("Morrow"), testified she and McKinney began dating in 2003 but McKinney moved to West Virginia in 2004, while she was pregnant with their now eight-year-old daughter. They reunited in December 2011 when McKinney moved into her Parma home. On February 14, 2012, two months after McKinney moved in with Morrow, Morrow walked to a nearby gas station to buy cigarettes while McKinney was sleeping. McKinney awoke while Morrow was gone and learned from his daughter that she had gone to the gas station. He walked to the gas station where he saw Morrow standing beside a pickup truck talking to a man who was sitting in the driver's seat.

{¶4} When Morrow saw McKinney approaching, she immediately began walking back to their house. McKinney told her: "I caught you red-handed," and called her "a whore," "a bitch," and "a slut." Inside the house, McKinney demanded money from Morrow. McKinney had his paycheck deposited into Morrow's checking account, and

Morrow had used it to pay a cable bill and to repay a debt owed to McKinney's brother. Morrow, who was afraid of McKinney, asked McKinney to leave the house but he refused.

{¶5} Morrow reached for her jacket intending to leave, and McKinney grabbed her by the throat and shoved her against a wall in the kitchen. When he released her a few seconds later, she grabbed her jacket and instructed her daughter and her friend, who was visiting, to meet her at a parking lot down the street. She and the children went to a friend's house around the corner where the friend, Michelle Komm ("Komm"), called 911. Morrow testified she did not want to call 911 because she had called them too many times in the past.

{¶6} Komm testified that Morrow appeared nervous and scared when she arrived and that she could see red marks on Morrow's neck. Parma police officers Eric Neff ("Neff") and Thurston Voisine ("Voisine"), who responded to Komm's house, also testified they saw red marks on Morrow's neck but decided not to take pictures because by the time they obtained a statement from her, the marks had diminished and were too faint to show up in a photograph. Voisine also testified that the marks on Morrow's neck were consistent with her statement that McKinney grabbed her neck with his right hand.

{¶7} Morrow and her daughter spent the night at a friend's house because she was afraid to return home. During the night, McKinney left ten voicemail messages on Morrow's cell phone, which were played for the court. In one message, McKinney states, in part: "You know I caught you red-handed. You're a whore." In another

message he threatens: "I dare you to come home." He also repeatedly calls her "a whore" and "a bitch" and demands the return of his money. In later messages, he admits: "They're gonna put me in prison because if I get any new cases they're going to put me in prison for three years." He tells Morrow: "If you tell the police that I did not touch you, they won't put any new charges on me." Some of these phone calls were made from Morrow's home phone.

{¶8} The next morning, police escorted Morrow to her home to retrieve her daughter's bookbag for school. When she entered the house, she observed the words "whore" and "bitch" written on the kitchen cabinets. In the bathroom, the door had been ripped off the medicine cabinet, and there was broken glass on the floor. Her mattress was glued to the box spring, and shampoo, hair gel, nail polish remover, and other substances had been dumped on the bed. The television screen was shattered, her coat was ripped, and the cords had been cut off of the vacuum cleaner, coffee pot, and curling iron. Later that day, Morrow made a formal complaint against McKinney.

{¶9} Morrow subsequently obtained a protection order forbidding McKinney from contacting her. Following the incident, she and her daughter lived with Carmen and Jennifer Basile for approximately four months until Morrow obtained her own housing.

{¶10} McKinney's mother, Linda Smith ("Smith"), who testified for the defense, stated she observed Morrow and McKinney hugging each other when Morrow brought her daughter to visit McKinney's grandmother. She also testified that she gave McKinney a digital recording device that recorded conversations between McKinney and

Morrow. During one of the conversations, which were also played for the court, McKinney told Morrow: "You know I didn't do this to you, you're making this up." She responded, "Yeah, whatever." Morrow explained that she was tired of McKinney repeatedly discussing the event and wanted to stop the conversation. Morrow also testified that McKinney instructed her on multiple occasions that she could not appear in court or just say: "I lied."

{¶11} The court found McKinney guilty and sentenced him to a 36-month prison term to run consecutive to a three-year sentence he received in the Summit County Common Pleas Court for aggravated robbery. The court also ordered restitution in the amount of $4,122 and waived court costs. McKinney now appeals and raises three assignments of error.

## Motion in Limine

{¶12} In the first assignment of error, McKinney argues the trial court erred in granting the state's motion in limine to exclude the testimony of Carmen Basile ("Basile"). He contends Basile should have been permitted to testify about an alleged prior inconsistent statement Morrow made to impeach her credibility and that the exclusion of this evidence denied him his constitutional right of confrontation and cross-examination.

{¶13} The right of cross-examination includes the right to impeach a witness's credibility. *State v. Green*, 66 Ohio St.3d 141, 147, 609 N.E.2d 1253 (1993). "Cross-examination of a witness is a matter of right, but the 'extent of

cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.'" *Id.*, quoting *Alford v. United States*, 282 U.S. 687, 691, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931). Therefore, we will uphold the trial court's decision on whether to admit or exclude extrinsic evidence of a prior inconsistent statement absent an abuse of discretion. *Id.*

{¶14} Under Evid.R. 613(B), which governs impeachment by self-contradiction, extrinsic evidence is not admissible unless a proper foundation is laid for its admission. To establish a proper foundation: (1) the witness must be asked whether he or she made the prior inconsistent statement: (2) the witness is given an opportunity to admit, deny, or explain the statement; and (3) the opposing party is given an opportunity to interrogate the witness regarding the inconsistent statement. Evid.R. 613(B)(1); *State v. Martinez*, 8th Dist. Cuyahoga No. 97233, 2013-Ohio-1025, ¶ 15, citing *State v. Morgan*, 8th Dist. Cuyahoga No. 97934, 2012-Ohio-4937, ¶ 14-15. If a witness denies making the statement, extrinsic evidence of the statement is generally admissible if it relates to "a fact of consequence to the determination of the action." Evid.R. 613(B)(2)(a), *Martinez* at ¶ 15.

{¶15} In this case, the defense sought to call Basile as a witness to impeach Morrow's testimony that McKinney grabbed her by the neck. Defense counsel asked Morrow on cross-examination if she told Basile that McKinney "never laid his hands on her," and Morrow denied making the statement. Thus, Morrow was presented with the statement, afforded the opportunity to admit, deny, or explain the statement, and denied

making the statement. Further, the statement related to the ultimate fact in question, i.e., whether McKinney committed domestic violence by grabbing her neck and shoving her into a wall. Therefore, this evidence was admissible under Evid.R. 613(B) for impeachment purposes and should have been admitted.

{¶16} Nevertheless, we find the exclusion of this evidence harmless. Lack of an opportunity to fully cross-examine a state witness is a harmless error when there is overwhelming, untainted evidence supporting a conviction. *Green,* 66 Ohio St.3d 148, citing *Harrington v. California*, 395 U.S. 250, 253-254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Here, several witnesses besides Morrow, including two Parma police officers, testified that they observed red marks on her neck, which corroborates Morrow's testimony that McKinney grabbed her by the neck. The record also contains photographs of the damage McKinney caused to Morrow's home the night of the incident, which provides evidence of McKinney's anger and loss of self-control on the night of the incident. Further, McKinney's defense counsel was able to question Morrow's credibility by asking her about her alleged prior inconsistent statement.

{¶17} The record also includes voicemail recordings of McKinney saying: "I caught you red-handed" and calling her "a whore" and "a bitch." These statements corroborate Morrow's testimony that he accused her of having sex with a man in the gas station parking lot. Moreover, McKinney asks her to lie so he may avoid a domestic violence conviction that would guarantee a three-year prison sentence. Therefore, because the record contains overwhelming evidence of McKinney's guilt, the trial court's

error in excluding extrinsic evidence to impeach Morrow's testimony is harmless beyond a reasonable doubt.

{¶18} The first assignment of error is overruled.

## Weight of the Evidence

{¶19} In the second assignment of error, McKinney argues his conviction is against the manifest weight of the evidence because Morrow, who was the only eyewitness to the event, was not credible.

{¶20} The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The manifest weight standard is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶21} McKinney was convicted of domestic violence in violation of R.C. 2919.25(A), which states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." It is undisputed that McKinney was living with Morrow at the time of the incident and was a member of her household.

**{¶22}** McKinney argues Morrow's testimony that he physically harmed her by grabbing her by the throat and shoving her into the wall was not credible because she continued to have contact with him and sent him a text message stating "I love you too," after she obtained the protection order against him. McKinney also asserts that the recorded telephone conversation he had with Morrow proves she falsely accused him of domestic violence because she did not argue with him when he said, "Tell the truth that I didn't touch you."

**{¶23}** Morrow did not dispute that she sent text messages to McKinney or that in one message she stated: "I love you too." When asked why she continued to carry on a conversation with McKinney, she explained that she still cared about him and that he was her daughter's father. She also admitted "I honestly don't have a reason for why I kept the conversation going."

**{¶24}** Nevertheless, Morrow's communication with McKinney after the incident does not discredit her testimony because her testimony is corroborated by other evidence in the record. As previously stated, Komm and two Parma police officers testified they saw red marks on Morrow's neck that were consistent with her story that he grabbed her throat. Komm and the police also described her demeanor as "nervous" and "scared" immediately after the domestic violence occurred. Moreover, McKinney's voicemail messages accusing Morrow of cheating on him, calling her names, and instructing her to lie about her accusations, not only corroborate her story but practically amount to an

admission to the crime. Therefore, we cannot say the trial court lost its way when it found McKinney guilty of domestic violence.

**{¶25}** The second assignment of error is overruled.

## Sentencing

**{¶26}** In the third assignment of error, McKinney argues the trial court erred in ordering his sentence to run consecutive to the three years he received for violating probation while on judicial release for aggravated robbery in Summit County. He contends the trial court erred when it failed to make any of the factual findings required by R.C. 2929.14(C)(4) for the imposition of consecutive sentences.

**{¶27}** R.C. 2953.08(G)(2) states that when reviewing prison sentences, "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." Instead, the statute permits the appellate court to reverse the trial court's imposition of consecutive sentences upon an offender if we "clearly and convincingly" find that, (1) "the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)]" or that, (2) "the sentence is otherwise contrary to law." *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶ 11.

**{¶28}** R.C. 2929.14(C)(4) requires a sentencing judge to make three distinct findings before imposing consecutive sentences, in addition to whatever findings the judge makes with respect to the purposes and goals of sentencing. *Id*. at ¶ 17. First, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender." R.C. 2929.14(C)(4). Second, the trial court

must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* Finally, the trial court must find that at least one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

The failure to make these findings is "contrary to law." *Venes* at ¶ 12.

**{¶29}** As this court explained in *Venes*, compliance with R.C. 2929.14(C) "requires separate and distinct findings in addition to any findings relating to purposes and goals of criminal sentencing." *Id.* at ¶ 17, citing *State v. Jones*, 93 Ohio St.3d 391, 399, 2001-Ohio-1341, 754 N.E.2d 1252. We have never held that the court must recite the statute verbatim when making its findings, though doing so may prove to be a useful guide. "In the past, we have found those findings can be implicit in context when the court's statements during sentencing are intended to encompass the relevant provisions of the sentencing statutes." *Venes* at ¶ 14, citing *State v. Moore*, 8th Dist. Cuyahoga No. 84911, 2005-Ohio-4164, ¶ 7. However, unless the trial court strictly complies with the

statutory requirements, it is not always clear whether the court actually "engaged in the required analysis" and made all the findings. *See Venes* at ¶ 17. This is particularly true when the court's findings are scattered throughout the sentencing transcript rather than in a separately organized group of findings.

{¶30} Findings are not to be confused with reasons. The trial court is not required to provide reasons for selecting consecutive sentences. *Venes*, 2013-Ohio-1891 at ¶ 10. "[W]hile the General Assembly reenacted the portion of R.C. 2929.14 related to making factual findings prior to imposing consecutive sentences, the General Assembly did not reenact 2929.19(B)(2)(c) which required trial courts to give reasons for imposing consecutive sentences." *State v. Brooks*, 9th Dist. Summit Nos. 26437 and 26352, 2013-Ohio-2169, ¶ 12. Although the trial court is free to explain its reasons for selecting consecutive sentences and to share its thoughts with the defendant, these statements should be separate from the court's actual findings.

{¶31} We are nonetheless mindful of the realities of felony sentencing. There are, at times, interruptions. Families and victims may be emotional, and judges may become sidetracked while pronouncing their findings. It is doubtful the legislature intended for us to reverse consecutive sentences every time a trial court's findings fail to appear in a single paragraph or a single page. We therefore take a practical, common sense approach in reviewing consecutive sentences while nevertheless requiring more than just "substantial compliance" with the statute. *State v. Schmick*, 8th Dist. Cuyahoga No. 99262, 2013-Ohio-4488, ¶ 13.

**{¶32}** Here, the trial court made only one of the three findings required under R.C. 2929.14(C)(4) before imposing consecutive sentences. In accordance with R.C. 2929.14(C)(4)(c), the court found that the "offense was committed while the defendant was not only on probation in the Summit County Common Pleas Court, but was on probation following judicial release on a felony of the first-degree, aggravated robbery, on which a four-year prison sentence was imposed." The court also stated:

> The Court finds that in this case the defendant does have an extensive criminal history. That criminal history does consist of multiple violent offenses including prior * * * domestic violence charges.

> The Court finds the defendant has been offered services in the past by courts, has not benefitted from those services, that the defendant has been incarcerated in the past and clearly has not been satisfactorily rehabilitated based on the prior incarcerations that the defendant had.

> *     *     *

> The Court finds that with regard to the instant case that at least severe emotional trauma and emotional damage was inflicted on the victims here. There was also physical harm that was noted by the police officers in their reports. * * * What this tells me is you're just a bully. You are just a big bully and your criminal history belies the fact. * * * Extensive criminal history of violent offenses, a drug and alcohol problem that the Court believes that you are not accepting responsibility for. The offenses at issue were committed in the presence of or with children nearby, and the Court feels that based on the soliloquy given today by the defendant to this Court that the defendant does not have remorse for the offense that took place here.

**{¶33}** Although the court recounted McKinney's extensive criminal history and described the harm suffered by the victims, it failed to specifically find that consecutive service is necessary to protect the public and to punish the offender. It also failed to make a specific finding that consecutive sentences are not disproportionate to the seriousness of

McKinney's conduct and the danger he poses to the public. R.C. 2929.14(C)(4). We therefore sustain the third assignment of error.

{¶34} Judgment affirmed in part and reversed in part and remanded.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
TIM McCORMACK, J., CONCUR