[Cite as *State v. Burns*, 2014-Ohio-303.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99782**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL BURNS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-566534

**BEFORE:** Celebrezze, P.J., Keough, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** January 30, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY:    Cullen Sweeney
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Brian Hoffman
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Defendant-appellant, Michael Burns, appeals his felonious assault and assault convictions that were rendered after a jury trial. After a careful review of the record and relevant case law, we affirm appellant's convictions.

## I. Procedural and Factual History

{¶2} On September 19, 2012, a true bill indictment was returned against appellant charging him with two counts of felonious assault in violation of R.C. 2903.11(A)(2), felonies of the second degree; two counts of assault in violation of R.C. 2903.13(A), felonies of the fourth degree; and one count of having a weapon while under disability, a felony of the third degree. The felonious assault charges carried one- and three-year firearm specifications. On February 26, 2013, the matter proceeded to a jury trial on the felonious assault and assault charges, at which the following evidence was adduced.

{¶3} At approximately midnight on August 25, 2012, paramedics David Enzman and Wanda Ocasio responded to appellant's residence in response to a call concerning "nontraumatic back pain." As they approached the apartment building, they noticed a man, later identified as appellant, looking out the second story window. At that time, Enzman and Ocasio yelled up to appellant and asked whether he had called 911. According to Enzman and Ocasio, appellant responded that he did call for an ambulance, but he no longer needed assistance. Ocasio testified that appellant mumbled something else, but it was "unintelligible" and not very loud. Enzman, however, testified that he

heard appellant plainly say, "[y]es, I called 911, but I don't need you anymore, I'm going to kill you."

{¶4} According to both Ocasio and Enzman, they observed appellant holding "a large gun with a pistol grip." Enzman testified that appellant was initially pointing the firearm "up towards the ceiling," but then pointed the gun down toward them. Ocasio testified that the firearm was "pointed direct[ly] at us." At that time, Ocasio and Enzman ran to their EMS vehicle. As they ran, Enzman and Ocasio heard the cocking of the gun and two "pops" or "booms," which they believed were gunshots.

{¶5} Dawn Chavis, appellant's downstairs neighbor, testified that on the evening of August 25, 2012, she was sitting with her children when she heard an ambulance approach the residence. Chavis testified that she was standing at the front door "being nosey" when she heard the paramedics say "he has a gun." Chavis then heard a "popping sound" and witnessed the paramedics run to their EMS vehicle. Although Chavis admitted that at the time of the incident she believed she heard gunshots based on the paramedics' reaction, she clarified that after she had the time to think, she could not "quite say [whether] it was a gunshot or not," but that "[she] did hear a pop." Chavis further testified that prior to the EMS arriving at the residence, she "heard the cocking of a gun" and heard appellant state, "[t]hey believe in Satan or they believe in me."

{¶6} Once inside the EMS vehicle, Ocasio and Enzman drove down the street and called dispatch. When police responded to appellant's residence, there was a standoff for approximately three hours. The situation eventually resolved itself when appellant

came outside and surrendered. He was taken to St. Vincent Charity Hospital and stayed in the psychiatric unit for approximately five days.

{¶7} Detective Jason Schramm of the Cleveland Police Department testified that a Maverick 12-gauge shotgun was found inside appellant's residence. However, police did not discover any ammunition or spent cartridges in the residence. As part of his investigation in this matter, Det. Schramm conducted an interview with appellant at the county jail. During the interview, appellant admitted that he was holding his brother's shotgun when he saw the paramedics approach his residence. However, he denied allegations that he fired the weapon or threatened Enzman or Ocasio with the weapon. Appellant stated that the shotgun was not loaded and that there was no ammunition in the home. Appellant maintained that the entire incident was a "misunderstanding."

{¶8} At the conclusion of trial, the jury returned a guilty verdict on the first four counts and specifications. Thereafter, the trial court found appellant guilty of having a weapon while under disability. On March 14, 2013, the trial court sentenced appellant to a ten-year term of imprisonment.

{¶9} Appellant appeals, citing three assignments of error:

I. Appellant's felonious assault and assault convictions are not supported by legally sufficient evidence as required by state and federal due process.

II. Appellant's convictions for felonious assault and assault are against the manifest weight of the evidence.

III. Trial court denied appellant his right to a fair trial and committed reversible error when it denied him the opportunity to establish that the victim embellished his version of events after his initial statement to the police.

## II. Law and Analysis

### A. Sufficiency of the Evidence

{¶10} In his first assignment of error, appellant argues that his felonious assault and assault convictions were not supported by legally sufficient evidence.

{¶11} When an appellate court reviews a record on a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶12} Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which provides, "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Appellant was further convicted of assault in violation of R.C. 2903.13(A) , which provides, "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *."

{¶13} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Whether a defendant acted "knowingly" must be inferred from the totality of the circumstances surrounding the alleged offense. *State v. Booth*, 133 Ohio App.3d 555, 562, 729 N.E.2d 406 (10th Dist.1999). Furthermore, R.C. 2923.02(A)

defines "attempt" as follows: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶14} Because the elements of an assault are incorporated into the definition of a felonious assault, appellant's sufficiency argument focuses solely on his felonious assault convictions. In challenging the evidence supporting his felonious assault convictions, appellant argues that the state failed to establish that Enzman and Ocasio were almost shot or were otherwise "in the line of fire." Appellant contends that, without evidence that they were "in the line of fire," the state failed to prove that he engaged in conduct that was strongly corroborative of an intent to cause serious physical harm. In support of this argument, appellant relies on the Ohio Supreme Court's decision in *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972 (1992). *Mills*, however, is distinguishable from the instant case.

{¶15} In *Mills*, the defendant had been accused of committing several felonious assaults during the commission of a bank robbery. The Ohio Supreme Court vacated one of those counts against a teller who was not in the "line of fire" of the discharged bullets. However, in the case at hand, we find that the testimony of Enzman and Ocasio sufficiently demonstrates that they were in the "line of fire" of appellant's gunshots. Both Enzman and Ocasio testified that appellant cocked the shotgun and aimed it directly at them just moments before they heard gunshots as they fled to the EMS vehicle. We find no merit to appellant's contention that the state was unable to meet its burden of

proof because Enzman and Ocasio could not know where appellant was pointing the weapon at the time the shots were fired because their backs were turned as they fled. Under the circumstances, we find that a reasonable jury could infer that Enzman and Ocasio were "in the line of fire" at the time appellant discharged his weapon.

{¶16} Viewing the evidence in a light most favorable to the state, we find that a rational trier of fact could have found that appellant knowingly attempted to cause physical harm to Enzman and Ocasio by means of a deadly weapon.

{¶17} Moreover, even if this court were to accept appellant's position that (1) he never fired the weapon,[1] or (2) if he did fire the weapon, Enzman and Ocasio were not "in the line of fire," our holding would not change given the totality of the circumstances presented herein.

{¶18} In *State v. Brooks*, 44 Ohio St.3d 185, 542 N.E.2d 636 (1989), the Ohio Supreme Court addressed "whether the pointing of a deadly weapon is an 'attempt to cause physical harm' to another by means of a deadly weapon as encompassed in the definition of 'felonious assault.'" *Id.* at 189. In *Brooks*, the defendant was involved in a "heated conversation" with a barmaid, which resulted in the defendant pointing a handgun at the woman's face and stating, "B****, I will kill you." *Id.* at 187. The Ohio Supreme Court upheld the defendant's felonious assault conviction based on the totality of the circumstances. However, the court went on to hold that "[t]he act of pointing a

---

[1] Although appellant maintains that he did not fire the shotgun, he appears to have conceded the sufficiency of the evidence supporting the discharge of the weapon based on Enzman and Ocasio's testimony that they heard gunshots.

deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *Id.* at the syllabus.

{¶19} Subsequently, in *State v. Green*, 58 Ohio St.3d 239, 569 N.E.2d 1038 (1991), the Ohio Supreme Court reviewed its decision in *Brooks* and explained:

> It can be readily gleaned from our holding in *Brooks* * * * that the additional evidence needed to uphold a felonious assault charge could include verbal threats as perceived by a reasonable person under the circumstances. *Id.* at 241. Therefore, the act of pointing a deadly weapon at another, coupled with a threat, indicates an intention to use such weapon, and is sufficient evidence to convict a defendant of the offense of "felonious assault" as defined by R.C. 2903.11(A)(2).

{¶20} Applying *Brooks* and *Green* to the facts presented herein, we find that appellant's act of pointing the gun at Enzman and Ocasio, coupled with his threat, "I'm going to kill you," constituted sufficient evidence to convict him of felonious assault, regardless of whether he actually fired the weapon.

{¶21} For the reasons discussed, we find that appellant's felonious assault and assault convictions are supported by sufficient evidence.

{¶22} Appellant's first assignment of error is overruled.

### B. Manifest Weight of the Evidence

{¶23} In his second assignment of error, appellant argues that his convictions for felonious assault and assault are against the manifest weight of the evidence.

{¶24} In reviewing a manifest weight challenge, the Ohio Supreme Court, in *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, stated:

[A] reviewing court asks whose evidence is more persuasive — the state's or the defendant's? * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." [*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997)], citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶25}   Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"   *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'"   *Id.*, quoting *Martin*.

{¶26} In addressing a manifest weight of the evidence argument, we are guided by the presumption that the jury, or the trial court in a bench trial, "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."   *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).   Accordingly, we afford great deference to the trier of fact's determination of witness credibility. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶27} In challenging the weight of the evidence supporting his convictions, appellant contends that Enzman's testimony that appellant threatened to kill him was not credible.   Appellant maintains that "Enzman's testimony about the alleged threat made

by [appellant] was simply not credible given the testimony of his partner, Ocasio, * * * [who] was standing right next to Enzman and did not hear [appellant] make a threat." In addressing this argument, we note that Ocasio did testify that she heard appellant mumble something just before he pointed the weapon at her. In our view, the fact that Ocasio was unable to understand appellant's statement does not render her testimony inconsistent with Enzman's or imply that Enzman's testimony concerning the threat was not credible. Under these circumstances, the jury was in the best position to weigh the credibility of the witnesses and was free to believe Enzman's testimony that appellant threatened to kill him as he pointed a weapon at him and Ocasio.

{¶28} Appellant also points to the absence of any physical evidence to show that he fired the shotgun in question, noting that the police did not recover any ammunition or spent shell casings inside his residence. However, the quality of the physical evidence in the state's case was not dispositive in this matter. *See State v. Shedwick*, 10th Dist. Franklin No. 11AP-709, 2012-Ohio-2270, ¶ 32 ("A lack of physical evidence alone does not render a conviction against the manifest weight of the evidence").

{¶29} With respect to the weight of the evidence supporting the state's theory of the case, the record contains testimony from three separate witnesses who testified that they heard two "pops" or "booms," which they perceived to be gunshots at the time the incident occurred. Although testimony corroborated by physical evidence is preferred, there is nothing to suggest that the testimony provided by the state's witnesses on this issue was not credible.

{¶30} In light of the considerable evidence supporting the convictions, we conclude that the jury did not lose its way or create a manifest miscarriage of justice. Accordingly, appellant's convictions are not against the manifest weight of the evidence.

{¶31} Appellant's second assignment of error is overruled.

## C. Impeachment Evidence

{¶32} In his third assignment of error, appellant argues that he was denied the right to a fair trial when the trial court denied him the opportunity to establish that Enzman embellished his version or the events after his initial statement to the police.

{¶33} The decision whether to admit or exclude evidence at trial falls within the sound discretion of the trial court. *State v. Robb*, 88 Ohio St.3d 59, 69, 2000-Ohio-275, 723 N.E.2d 1019. The record must reflect an abuse of discretion, i.e., that the trial court acted in an unreasonable, arbitrary, or unconscionable manner, in order for an appellate court to disturb a ruling of the trial court as to the admissibility of evidence. *State v. Pruitt*, 8th Dist. Cuyahoga No. 98080, 2012-Ohio-5418, ¶ 10, citing *State v. Hamilton*, 8th Dist. Cuyahoga No. 86520, 2006-Ohio-1949, ¶ 19.

{¶34} Within this assignment of error, appellant contends that the absence or existence of a verbal threat in this case was a key factual question that the jury was required to resolve. In an effort to impeach Enzman's testimony concerning the verbal threat, defense counsel argues that, under Evid.R. 613(B), he was entitled to present extrinsic evidence of a material omission made by Enzman during his initial interview with Det. Schramm. Specifically, defense counsel maintains that he should have been

permitted to question Det. Schramm about the fact that he interviewed Enzman on the night of the incident, but did not include any indication that a threat occurred in his police report. However, the trial court refused to permit this line of inquiry because, in its view, defense counsel "cannot impeach Enzman through Schramm's police report." Appellant maintains that the trial court's evidentiary ruling was improper and highly prejudicial.

{¶35} Evid.R. 613(B) governs the admissibility of extrinsic evidence of a prior inconsistent statement. It states, in relevant part:

> Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
>
> (1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
>
> (2) The subject matter of the statement is one of the following:
>
> (a) A fact that is of consequence to the determination of the action other
>
> than the credibility of a witness * * *.

{¶36} Extrinsic evidence is not admissible under Evid.R. 613(B) unless a proper foundation is laid for its admission. A foundation must be established through direct or cross-examination in which (1) the witness is presented with the former statement; (2) the witness is asked whether he or she made the statement; (3) the witness is given an opportunity to admit, deny, or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness regarding the inconsistent statement. *State v.*

*Morgan*, 8th Dist. Cuyahoga No. 97934, 2012-Ohio-4937, ¶ 15, citing *State v. Theuring*, 46 Ohio App.3d 152, 155, 546 N.E.2d 436 (1st Dist.1988).

**{¶37}** Assuming, without deciding, that defense counsel laid the proper foundation for the admission of extrinsic evidence under Evid.R. 613(B), we find that any alleged error in the trial court's limitation of defense counsel's cross-examination of Det. Schramm was harmless beyond a reasonable doubt. *See State v. McKinney*, 8th Dist. Cuyahoga No. 99270, 2013-Ohio-5730, ¶ 16. While appellant's arguments focus solely on the alleged threat, "I'm going to kill you," the evidence in the record supporting the state's primary theory that appellant fired the weapon at Enzman and Ocasio was sufficient to convict appellant of felonious assault. Therefore, any testimony intended to discredit Enzman's testimony concerning the alleged threat would not have altered the outcome of this case.

**{¶38}** Appellant's third assignment of error is overruled.

**{¶39}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MARY EILEEN KILBANE, J., CONCUR